UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN
_____

**JOSH ZALLAR**,                                            Case No. 1:23-cv- 462

     Plaintiff,                                              Hon.

v

**JENISON PUBLIC SCHOOLS**,                    **VERIFIED COMPLAINT**

     Defendant.

_____

## PRELIMINARY STATEMENT

1.    This action includes prayer for injunctive, declaratory, and compensatory relief under Title VII of the Civil Rights Act of 1964, as amended 42 USC 2000e et seq.; the Elliot-Larsen Civil Rights Act (hereinafter "ELCRA"), MCL 37.2101 et seq.; and with claims of intentional infliction of emotional distress; vicarious liability; and negligence.

## PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff is an individual residing in the City of Hudsonville, Ottawa County, Michigan.

3.    Defendant is a public school system in operation throughout the unincorporated community of Jenison, Ottawa County, Michigan.

4.    Plaintiff brings claims in this lawsuit under Title VII of the Civil Rights Act of 1964, as amended 42 USC 2000e et seq.; the Elliot-Larsen Civil Rights Act (hereinafter "ELCRA"), MCL 37.2101 et seq.; and with claims of intentional infliction of emotional distress; vicarious liability; and negligence.

5.    Jurisdiction in this Court is proper under 28 USC 1331, which authorizes federal courts to decide cases concerning federal questions; 28 USC 1343(a)(3) and (4), which authorize federal courts to hear civil rights cases; and 28 USC 1367, which authorizes federal courts to exercise supplemental jurisdiction over state-law claims arising from the same core operative facts.

6.      Venue is proper as Plaintiff is employed by Defendant in the public school system in Ottawa County, Michigan, and the majority of the events alleged took place in the Western District of Michigan.

7.      Plaintiff was, at all relevant times, employed by Defendant.

8.      Plaintiff is a member of a protected class under 42 USC 1981, as he is a brown-skinned, Asian/Indian American Citizen.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff filed a charge of employment discrimination on the basis of color, national origin, race, and/or retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the commission of the unlawful employment practices alleged in this claim.  (**Exhibit A**).

10.     Plaintiff received notification of the right-to-sue letter from the EEOC on February 3, 2023, and has filed this Complaint within 90 days of receiving the EEOC's notice of the right to sue.  (**Exhibit B**).

## STATEMENT OF FACTS

11.     Plaintiff is a graduate of Roosevelt University with a degree in Music Education (BME).

12.     On or about January 1, 2008, Plaintiff became certified as a teacher in the State of Wisconsin.

13.     On or about August 1, 2016, Plaintiff became certified as a teacher in the State of Michigan.

14.     Plaintiff has been teaching for approximately 15 years.

15.     On or about August 15, 2016, Plaintiff was employed by Defendant as a member of the Orchestra Department.

16.     Plaintiff and Defendant have had an ongoing employment relationship since his start date.

17.     During his employment, Plaintiff has worked primarily with the High School and Junior High School Orchestra students.

18.     Plaintiff is a brown-skinned, Asian/Indian American Citizen.

19.     Plaintiff is the only member of the music staff who is a minority in Defendant's school district.

2

20.     At all times relevant herein, Dan Scott (hereinafter "Mr. Scott") has been the Director of Defendant's Orchestra Department.

21.     As Director of Defendant's Orchestra Department, Plaintiff is a subordinate to Mr. Scott.

22.     At all times relevant herein, Plaintiff was under the general and broad control of Mr. Scott as Director of Defendant's Orchestra Department.

23.     At all times relevant herein, Carol Johnson (hereinafter "Ms. Johnson") has been the Junior High Director of Defendant's Orchestra Department.

24.     At all times relevant herein, Plaintiff was under the general and broad control of Ms. Johnson as Junior High Director of Defendant's Orchestra Department.

25.     At all times relevant herein, Leslie Philipps Ed.S. (hereinafter "Ms. Philipps") has been the Assistant Superintendent of Defendant.

26.     At all times relevant herein, Plaintiff was under the general and broad control of Ms. Phillips as Assistant Superintendent of Defendant.

27.     From August 2016 through June 2021, Dr. Brandon Graham (hereinafter "Dr. Graham") was Principal of Plaintiff's building, and from July 2021 to present has been the Superintendent of Defendant.

28.     At all times relevant herein, Plaintiff was under the general and broad control of Dr. Graham, first as Principal, and now as Superintendent of Defendant.

29.     Beginning in April of 2021, Plaintiff has been subjected to repeated and ongoing discrimination and harassment by members of the Orchestra Department, primarily caused by Mr. Scott, to wit:

      a.  Mr. Scott has made comments alluding that Plaintiff should be fluent in technological issues, given that he is an Asian/Indian American Citizen;

      b.  In May of 2021, Mr. Scott showed the Symphony Orchestra a video of a minority individual who happened to be disabled having a traumatic reaction to fireworks, and indicated that it reminded him of a minority student who was, at the time, utilizing a scooter due to an injury; and

      c.  By verbally berating and humiliating Plaintiff while in the presence of students of the Orchestra Department.

30.     In May of 2021, Plaintiff was assigned to switch job placements with another

3

individual in the Orchestra Department, from his position in the high school to the junior high and elementary schools.

31.     The individual with whom Plaintiff was to switch jobs with left the district before the school year started.

32.     Plaintiff requested that he return to his position at the high school level, primarily to retain his placement and alleviate any staff unrest he had been encountering.

33.     Defendant denied Plaintiff's request, causing him to continue being subject to Mr. Scott's disparate treatment.

34.     On June 18, 2021, Plaintiff filed a formal internal complaint with Defendant due to Mr. Scott's harassment and disparate treatment, alleging color and race discrimination.  (**Exhibit C**).

35.     Despite Plaintiff's claims that Mr. Scott's treatment of him due to his status as a protected class member – i.e. Mr. Scott's overall behavior creates an intimidating, hostile, and offensive environment; which substantially and unreasonably interferes with his work performance; and otherwise adversely affects his employment – Defendant determined Mr. Scott was not in violation of Defendant's anti-harassment anti-discrimination policies.  (**Exhibit D**).

36.     In August of 2021, Defendant directed a list of job responsibilities relative to the Orchestra Department employees.  (**Exhibit E**).

37.     On August 17, 2021, Mr. Scott, Ms. Philipps, and Dr. Graham (among others) held a meeting to discuss the job responsibilities.

38.     During said meeting, Dr. Graham verbally scolded Plaintiff after he raised concerns regarding the job responsibilities and in light of the hostile work environment Plaintiff had been working under.

39.     During said meeting, Plaintiff was repeatedly cut-off, spoken-over, and told that his input was not important.

40.     On September 2, 2021, Plaintiff was called to a meeting involving Ms. Philipps and others, during which Plaintiff was scolded for a social media post on a page attributed to orchestra teachers in which he asked for suggestions on how one might better collaborate with his or her colleagues.

41.     Despite the fact that Plaintiff posted without using any identifying information, using his personal profile that does not list his affiliation with Defendant, Ms. Philipps harassed

Plaintiff telling him that it was wrong of him to post such things because it makes Defendant "look bad."

42.     Ms. Philipps further berated, humiliated, and embarrassed Defendant, making comments concerning Plaintiff's children and career, such that it brought Plaintiff to tears.

43.     At this time, Plaintiff asked Ms. Philipps about his job placement to the junior high and elementary schools, to which she indicated that his placement was based on seniority.

44.     However, at the time of Plaintiff's transfer to the junior high and elementary schools, Plaintiff had a higher level of seniority, and neither Plaintiff nor the other individual expressed a desire to be transferred.

45.     Upon information and belief, Plaintiff was transferred due to demands made by Mr. Scott, and claims made by Mr. Scott that he could not work with Plaintiff.

46.     On September 13, 2021, Plaintiff contacted Mr. Scott and Ms. Johnson to notify them that he would be absent due to illness on September 13 and 14, as was the common practice among members of the Orchestra Department.

47.     At the time, it was common practice for members of the Orchestra Department to cover for one another in the event of an absence rather than hire a substitute teacher.

48.     Plaintiff had covered for both Mr. Scott and Ms. Johnson a number of times over the course of his employment, during which time he was not compensated.

49.     On this occasion, Ms. Johnson lodged an internal complaint with Defendant, resulting in Plaintiff having to address the issue with administrators of Defendant.

50.     On September 22, 2021, Ms. Philipps emailed Plaintiff accusing him of lying and using the excuse of a personal illness to perform at a side job.  (**Exhibit F**).

51.     Plaintiff did not perform at a side job, but rather was very ill.

52.     During the course of Plaintiff's employment with Defendant, Mr. Scott and Ms. Johnson have routinely been absent in order to attend extracurricular activities, however no complaints have been made for doing so.

53.     On September 24, 2021, Plaintiff explained his absence on September 13 and 14, and also asked for verification to attend three extracurricular events that would involve him (1) acting as a conductor for the Holland Symphony after school-hours but during parent-teacher conferences; (2) running a one-day orchestra clinic at North Rockford Middle School for a half-day; and (3) directing an all-district honors orchestra for two weekdays in Green Bay, Wisconsin.

(See **Exhibit F**).

54.     In relation to parent-teacher conferences, Plaintiff offered several options that would allow him to participate in the parent-teacher conferences as well as conduct the Holland Symphony.  (See **Exhibit F**).

55.     Upon information and belief, other members of the Orchestra Department have been granted similar allowances in the past, therefore Plaintiff did not see it as an unreasonable request.[1]

56.     Despite white members of the Orchestra Department historically missing conferences for similar extracurricular activities, Ms. Philipps denied Plaintiff's requests.  (See **Exhibit F**).

57.     As a result of the foregoing, on November 2, 2021, Plaintiff filed a charge of employment discrimination on the basis of color, national origin, race, and/or retaliation with the EEOC.  (See **Exhibit A**).

58.     After Defendant learned of Plaintiff's charge of employment discrimination, Plaintiff suffered increased hostility and discriminatory actions at the hand of members of the Orchestra Department, Ms. Philipps, and others.

59.     During an Orchestra Department meeting December 16, 2021, Mr. Scott indicated that Plaintiff needed to remove his items from the High School Orchestra Office to make room for a student teacher who would be starting after Winter Break.

60.      That evening, Rhonda Raab (hereinafter "Ms. Raab") emailed Plaintiff indicating he would need to have the area "cleared out" by January 3, 2022.  (**Exhibit G**).

61.     In order to have his items removed by January 3, 2022, Plaintiff would have had to go to the High School Orchestra Office during Winter Break – time he is not contractually bound or paid to be working.

62.     Plaintiff made Ms. Raab aware that he would not be able to get the area cleared out prior to January 3, 2022 due to it being such short notice and him having prior family engagements, but assured he would have time on January 3, 2022.  (See **Exhibit G**).

63.     Ms. Raab responded indicating that Plaintiff "certainly had the opportunity to

---

[1] As recently as March 29-30, 2023, Defendant approved a request by Mr. Scott to take personal days to participate in what was only labeled as a "cool opportunity."

remove [his] personal items [the] entire semester," and told him to have the task completed by January 3, 2022.  (See **Exhibit G**).

64. Upon information and belief, white members of the Orchestra Department are not subject to having to perform job duties on non-contractual time.

65. Shortly thereafter, Plaintiff was contacted by Jon Toppon, attorney for Defendant, who suggested Plaintiff resign because he should "be happy" in his position.

66. Further, Mr. Toppon offered a verbal separation agreement, whereby Defendant would offer a good recommendation on behalf of Plaintiff in exchange for his retracting the discrimination charge filed with the EEOC.

67. Plaintiff indicated that he was not unhappy in his position, but rather that he only sought to be treated the same as white employees of the Orchestra Department.

68. In or around February of 2022, Plaintiff submitted an "Intent Form," indicating that he would like to be transferred back to the High School Orchestra.

69. As of May 6, 2022, Plaintiff had not received a response to his "Intent Form."

70. On May 6, 2022, Ms. Raab sent an email blast to the Orchestra Department asking that those individuals attending the Spring Concert at Jenison High School please let Mr. Scott know – implying that concert was not mandatory.  (**Exhibit H**).

71. Plaintiff responded to Ms. Raab, indicating that he would not be attending for the following reasons:

**"Given some student initiated comments said to me when I've seen [High School] students in passing ("Orchestra is not the same with[out]…you here" "I hope you are back here next year" "Can you conduct us, we need someone who knows the music") and some things audience members told me at last year's [High School] spring concert, I think it would be inappropriate for me to attend."**

(See **Exhibit H, p. 7**).

72. After responding that he would not be attending, Plaintiff received a response from Ms. Philipps concerning his request to be transferred back to the High School Orchestra.

73. Specifically, on May 11, 2022, Ms. Philipps indicated, "[a]t this time, we do not have any new secondary sections, we don't plan to add a 4th dire[c]tor, and we anticipate the schedule for next year will be very similar to this year."  (**Exhibit I**).

74. When asked for clarification on the determination, Ms. Philipps responded, "[i]t has become evident over the last few years that significant workplace conflicts exist in the

orchestra department," and "[t]he District has the discretion to place teachers in positions that serve the District's best interests and is not bound by previous practices or assignments."  (See **Exhibit I**).

75.     Plaintiff's request to be moved back to his former position was, in truth, denied as retaliation for filing a discrimination complaint against Defendant.

76.     On May 26, 2022, Plaintiff was asked to meet with members of Defendant's staff, as well as Defendant's attorney, Jon Toppon, to discuss a conversation Plaintiff had with a student concerning teaching music.

77.     Specifically, Plaintiff was accused by Ms. Johnson of making a "derogatory comment" about the Orchestra Department staff in front of a student and other music teachers, to wit:

> **"The most important thing to being a music teacher is to be a good musician.  I know too many who aren't…like all of them."**

78.     This was not what Plaintiff said, and the only music teacher besides Plaintiff in the room at the time was Ms. Johnson.

79.     In actuality, a Junior High student had asked Plaintiff what it was like to be a music teacher, to which Plaintiff responded:

> **"Part of being a good music teacher is being the best musician that you can. That is something a lot of music teachers do not put their energy into."**

80.     Also during said meeting, Plaintiff's absence at the High School Spring Concert was addressed.

81.     Plaintiff explained that, based upon Ms. Raab's email, he was under the impression that his attendance at the Spring Concert was not mandatory.

82.     On June 1, 2022, Plaintiff received a written reprimand.  (**Exhibit J**).

83.     Specifically, Plaintiff was allegedly reprimanded based-upon: (1) Ms. Johnson's inaccurate summarization of his comments made to an 11th grade student concerning his experience as a music teacher; and (2) his absence at the Spring Concert.  (See **Exhibit J**).

84.     The written reprimand, signed by Ms. Philipps, was based upon her personal subjective opinion and those of the other members of the Orchestra Department with no consideration of Plaintiff's explanations and no objective application of salient portions of the Jenison Public School Employee Handbook.

85.     Plaintiff immediately responded to the written reprimand, indicating he believed that the reprimand "was an overreach and stretch by Jenison Public Schools" and "the result of a continued targeting of [him] throughout the 2021-22 school year and potentially a retaliation to [his] filing of a claim of discrimination."  (**Exhibit K**).

86.     What followed was an "Improvement Plan" Plaintiff was expected to follow for the 2022-2023 school year.  (**Exhibit L**).

87.     The purported purpose behind the "Improvement Plan" states, in part:

> **The goals set forth in this plan were developed from deficiencies and concerns observed in Josh's performance during the 2021-22 school year. During the 2021-22 school year, as outlined below, Josh displayed a pattern of conduct that caused frustration and discord within the Orchestra Department. It is clear that Josh is not happy with his current teaching placement within the Department and has expressed his objections in a passive aggressive and unproductive manner. Josh has demonstrated a refusal to move forward from the placement decision that was made at the end of the 2020-21 school year and when confronted with concerns regarding his actions, Josh has attempted to divert the conversation to his colleagues['] alleged misconduct or inaction.**

(See **Exhibit L**).

88.     The purported "Improvement Plan" was developed for no other reason than to further harass, intimidate, humiliate, embarrass, and discriminate against Plaintiff to create a hostile working environment in an attempt to "encourage" his ending his employment with Defendant.

89.     Further, the basis for development of the "Improvement Plan" is entirely subjective in nature, created with no consideration of Plaintiff's assertions and based only on the interpretation of emails shared by members of the Orchestra Department.

90.     The "Improvement Plan" was developed in retaliation to Plaintiff's complaints concerning discrimination and harassment by members of the Orchestra Department due to his color, race, and national origin.

91.     On August 3, 2022, Ms. Philipps indicated that Defendant committed to adding a fourth director to the Orchestra Department in the Summer of 2021, and that a "highly qualified" candidate had come to light.  (**Exhibit M**).

92.     Defendant never posted the position for a fourth director, and given Ms. Philipps' comments that Defendant never intended to add a fourth director, Plaintiff was confused as to why

his intention to move to High School Orchestra was refused.  (**Exhibit N**).

93.     The "highly qualified" individual Defendant hired is a white orchestra teacher who was a previous student of Mr. Scott and Ms. Johnson.  (**Exhibit O**).

94.     The "highly qualified" individual mentioned above was placed in Plaintiff's old position in the High School Orchestra Department – the same position Plaintiff expressed his intent to return to in February of 2022, however was told by Ms. Philipps Defendant had no intention on adding any new secondary sections, or a fourth director.  (See **Exhibit O**).

95.     Further, in response to Plaintiff's query, Ms. Philipps commented that "[s]ome personnel issues have been shared that are private that lead us to believe we need to add back the 4th director at this time."  (See **Exhibit O**).

96.     Shortly thereafter, Plaintiff was again asked to resign from Defendant's employment.

97.     In communications with Plaintiff concerning resignation, Ms. Philipps told Plaintiff that Defendant wanted to offer him a "soft landing," and indicated that he would receive a good referral from Defendant, and the written reprimand and improvement plan would not be documented in the file.

98.     Plaintiff was provided with a "Separation Agreement."  (**Exhibit P**).

99.     Included in the "Separation Agreement" was a "Release of Board and Waiver of Claims" which, had Plaintiff signed the agreement, would have released Defendant from liability for the following, in part:

> **[F]or all their actions taken in the course of their employment or while serving or employed as a Board member, employee, officer, or agent, from all claims, liabilities, demands, and causes of action, known or unknown, fixed or contingent, including, but not limited to, state or federal claims of discrimination based upon sex, race, national origin, religion, disability, tort, Teachers' Tenure Act, contract, constitutional, civil rights violation, Whistleblowers Protection Act, retaliation or any other claim or cause of action which he may have or claimed to have against Board, its members, employees, officers and/or agents as a result of his separation and hereby covenants not to file a suit to assert such claims.**

(See **Exhibit P, p 3**)

100.     Plaintiff refused to sign the "Separation Agreement," and continued working for Defendant.

101.    For the 2022-2023 school year, Defendant established duties for the Orchestra Directors in the Orchestra Department.  (**Exhibit Q**).

102.    As part of the duties, Plaintiff is to email Ms. Johnson by Wednesday of each week what he feels should be worked-on for the following week, and Ms. Johnson is to update a planning document by Friday.

103.    Throughout the 2022-2023 school year, Ms. Johnson has consistently refused to collaborate with Plaintiff in discussing initial weekly lesson plans, and instead does the planning on her own without any input from Plaintiff.

104.    At this time, Plaintiff does not even have editing access to allow him to provide his input as per the duties imposed upon him by Defendant.

105.    Additionally, Ms. Johnson has refused to collaborate with Plaintiff on assigned tasks per **Exhibit Q**, and instead, assigns him tasks without discussion, many of which involve classes that she teaches and Plaintiff does not.

106.    Per **Exhibit Q**, all orchestra staff is to be present in the classroom by 7:45 am.

107.    Ms. Johnson is consistently late, however has not received any admonishment or reprimand from Defendant.

108.    On numerous occasions, Plaintiff has covered for Ms. Johnson's absences without question – even if no advance notice is given.

109.    When Plaintiff needs to take time off, he is met with eye rolling, rude comments, and hostility from Ms. Johnson.

110.    Plaintiff endures immense anxiety due to the reactions he has received from Ms. Johnson relative to any time he must be absent.

111.    Ms. Johnson consistently degrades Plaintiff in front of students by "instructing him" how to appropriately conduct an orchestra class, however she does not do so when team-teaching with white members of the Orchestra Staff.

112.    Ms. Johnson's behavior towards Plaintiff causes Plaintiff embarrassment, humiliation, anxiety, degradation, and despair.

113.    On September 27, 2022, Ms. Johnson and Plaintiff were team-teaching a class of fifth graders how to properly up bow and down bow, using "rosin raps" – a method by which the student "raps" along saying "up" and "down" to keep track of bow direction.

114.    During said time, Ms. Johnson asked the entirely white classroom of students,

"Does anyone know how to rap?" and when no one raised their hand, she continued to exclaim "I bet Mr. Zallar knows how to rap."

115.    Plaintiff was the only individual of color in the classroom.

116.    On October 4, 2022, Plaintiff and Ms. Johnson were discussing a potential issue with a business on the SmartCard – a card used to help raise funds for the Orchestra Department in participation with offering discounts at local businesses.

117.    Specifically, one of the local businesses associated with the SmartCard had recently been featured in the news media as discriminating against people of color.

118.    In response to Plaintiff's concerns, Ms. Johnson indicated: "Many of the businesses are probably like that on the SmartCard. I just don't care."

119.    Upon information and belief, on November 15, 2022, Ms. Johnson was allowed by Defendant to attend an orchestra program for another institution instead of performing her duties for Defendant – an act that Plaintiff was told was not allowed when he requested to do the same.

120.    Upon information and belief, on March 29-30, 2023, Mr. Scott was allowed by Defendant to attend an orchestra program for another institution instead of performing his duties for Defendant – an act that Plaintiff was told was not allowed when he requested to do the same.

121.    On numerous occasions, Ms. Johnson and Mr. Scott have reassigned administrative tasks previously-assigned by Defendant in **Exhibit Q** without prior authorization, and without objection by Defendant.

122.    When Plaintiff has suggested reassignment of administrative tasks amongst the Orchestra Department Staff, he is told that Defendant wants them to "stick to the duties assigned this year."

123.    In February of 2023, Ms. Philipps performed a mid-year check in relative to Plaintiff's 2022-2023 Improvement Plan. (**Exhibit R**).

124.    A review of the same shows no marked issues with Plaintiff's performance.

125.    Plaintiff responded as requested and voiced any concerns he had relative thereto. (**Exhibit S**).

126.    One of the concerns voiced by Plaintiff related to the Jenison High School Symphony Orchestra being asked to perform at the Michigan Music Conference.

127.    Plaintiff discovered the day before the performance that he was the only Orchestra Director of Defendant to be excluded from conducting during the program, and that the Orchestra

Department had intentionally hidden that detail from him in the months prior to the program. (See **Exhibit S, p 5**).

128. On March 22, 2023, Defendant accused Plaintiff of misusing a personal day on March 20, 2023.

129. Plaintiff did not misuse a personal day, but rather performed (unpaid) with the Holland Symphony for their Link-Up program.

130. During the program, photographs were unknowingly taken of Plaintiff performing, and then provided to Ms. Philipps.

131. On numerous occasions, other members of the Orchestra Department have been allowed to use personal days to perform paid work – not unpaid work – in other districts.

132. Since his date of hire, Plaintiff has consistently scored a 3 or above on a scale of 1-4 in his annual evaluations. (**Exhibit T**).

133. A score of 2.45-3.44 is "effective" and 3.45-4 is "highly effective."

134. Since his date of hire, Plaintiff has consistently scored at a 4.0 in the areas of student growth and extra service to the profession.

135. Despite receiving high scores on his annual evaluations consistently since being hired, Plaintiff has been denied job placement opportunities by Defendant.

## COUNT I: DISCRIMINATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 42 USC 2000e et seq,

136. Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

137. Plaintiff is qualified for the position he currently holds with Defendant.

138. At all material times, Plaintiff was employed by Defendant.

139. At all material times, Plaintiff received high scores on his annual evaluations and was reviewed as "effective" and "highly effective."

140. Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's race, color, or national origin. 42 USC 2000e-2(a)(1).

141. Plaintiff is a member of a protected class, as a brown-skinned, Asian/Indian American Citizen.

142. Plaintiff was subjected to unwelcome racial, color, and national origin discrimination by Defendant.

143. The harassment Plaintiff complains of herein was based on race, color, and national

origin.

144.    The harassment Plaintiff complains of herein had and is having the effect of unreasonably interfering with Plaintiff's work performance and creating an intimidating, hostile, and offensive work environment.

145.    Defendant is liable for the discriminatory acts and impact of those acts based on the theory of *respondeat superior*, as the individuals who committed said acts were at all relevant material times employees of Defendant, and Defendant knew of the harassment yet unreasonably failed to take prompt and appropriate remedial action.

146.    Plaintiff has been subjected to discrimination based on his race, color, and national origin by Defendant, through its Orchestra Director Mr. Scott, including but not limited to the following forms:

    a.  Mr. Scott has made comments alluding that Plaintiff should be fluent in technological issues, given that he is an Asian/Indian American Citizen;

    b.  In May of 2021, Mr. Scott showed the Symphony Orchestra a video of a minority individual who happened to be disabled having a traumatic reaction to fireworks, and indicated that it reminded him of a minority student who was, at the time, utilizing a scooter due to an injury;

    c.  Intentionally excluding Plaintiff from performances, rehearsals, and other Orchestra Department activities while including the remainder of the Orchestra Department; and

    d.  By verbally berating and humiliating Plaintiff while in the presence of students of the Orchestra Department.

147.    Plaintiff has been subjected to discrimination based on his race, color, and national origin by Defendant, through its Orchestra Director Ms. Johnson, including but not limited to the following forms:

    a.  Asking an entirely white classroom of students, "Does anyone know how to rap?" and when no one raised their hand, she continued to exclaim "I bet Mr. Zallar knows how to rap;"

    b.  Singling-out Plaintiff as the only member of the Orchestra Staff of color and consistently degrading him in front of students by "instructing him" how to appropriately conduct an orchestra class;

    c.   Assigning Plaintiff menial tasks that are not part of his duties as part of his employment with Defendant;

    d.   Ignoring his attempts to perform the duties of his employment as related to planning of students' lessons;

    e.   Intentionally excluding Plaintiff from performances, rehearsals, and other Orchestra Department activities while including the remainder of the Orchestra Department;

    f.   Disregarding Plaintiff's concerns that the Orchestra Department is supporting a business that is publicly discriminating against individuals based on their race, color, or national origin; and

    g.   By verbally berating and humiliating Plaintiff while in the presence of students of the Orchestra Department.

148.    Plaintiff has been subjected to discrimination based on his race, color, and national origin by Defendant, through its Assistant Superintendent Ms. Philipps, including but not limited to the following forms:

    a.   Failing to properly investigate Plaintiff's complaints of discrimination;

    b.   Failing to take immediate and appropriate corrective action to stop discrimination of Plaintiff after repeated complaints;

    c.   Failing to take all reasonable steps necessary to prevent discrimination from occurring;

    d.   Failing to promote Plaintiff and instead hiring a white member for the Orchestra Department with substantially less experience and expertise than Plaintiff;

    e.   Issuing Plaintiff an unsubstantiated written reprimand and forcing him to adhere to an "Improvement Plan;"

    f.   Indicating to Plaintiff that, if he would resign, Defendant would offer Plaintiff a "soft landing" – meaning the written reprimand and "Improvement Plan" would disappear from Plaintiff's employment record;

    g.   Inappropriately attempting to coerce Plaintiff by talking about his abilities as a father, bringing him to tears and humiliating him during a meeting; and

    h.   Making allowances for white members of the Orchestra Department while denying Plaintiff the same treatment.

149.    Plaintiff has been subjected to discrimination based on his race, color, and national origin by Defendant, through its Superintendent Dr. Graham, including but not limited to the following forms:

      a.  Failing to properly investigate Plaintiff's complaints of discrimination;

      b.  Failing to take immediate and appropriate corrective action to stop discrimination of Plaintiff after repeated complaints;

      c.  Failing to take all reasonable steps necessary to prevent discrimination from occurring; and

      d.  By verbally berating and humiliating Plaintiff during meetings involving members of the Orchestra Department

150.    Defendant's actions in refusing to allow Plaintiff the same opportunities as white members of the Orchestra Department, and refusing to honor Plaintiff's request to return to his position at the High School level are retaliatory in nature.

151.    The discriminatory acts described herein are part of a longstanding, deep-rooted policy and/or practice by Defendant to discriminate against Plaintiff because of his race, color, and national origin.

152.    Defendant refused to promote Plaintiff as a result of his race, color, and national origin.  The position Plaintiff applied to or otherwise requested intention to return to, was awarded to someone with inferior experience and capabilities than Plaintiff.

153.    Defendant was either aware of the discrimination described herein and took no action to prevent it and/or actively participated in the discrimination.

154.    Plaintiff petitioned Defendant to stop the discrimination as described herein, however Defendant failed and/or refused to do so.

155.    As a result of Defendant's failure and/or refusal to stop the discrimination described herein, Plaintiff was required to file his complaint of discrimination with the EEOC, and ultimately, initiate the current lawsuit.

156.    As a direct and proximate cause of the aforesaid acts and omissions of Defendant, Plaintiff has and continues to suffer damages, including loss of earning capacity, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation

157.    In performance of the acts alleged herein, Defendant acted with conscious disregard

of Plaintiff's right to be free from discrimination based on race, color, and national origin, with the malicious intent to deprive Plaintiff of employment opportunities and benefits that must be accorded to all employees regardless of their race, color, or national origin.

158.    In bringing the current action, Plaintiff has retained services of counsel and as such is entitled to an award of attorney fees under 42 USC 200e-5(k).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT II: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 42 USC 2000e et seq,

159.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

160.    At all material times, Plaintiff was subjected to discriminatory practices during the course of his employment with Defendant.

161.    At all material times, the discriminatory practices and conduct of Defendant had the effect of unreasonably interfering with Plaintiff's work performance in that it created an intimidating, hostile, abusive and offensive environment, which hostile work environment seriously affected the physical and psychological well-being of Plaintiff, altering the conditions of his employment.

162.    The actions and conduct of Defendant were – without limitation – knowing and intentional, offensive, and otherwise caused Plaintiff to be subjected to a hostile work environment as a consequence of his race, color, and national origin.

163.    Defendant's conduct in maintaining and condoning a hostile work environment on the basis of Plaintiff's race, color, and national origin was an unlawful employment practice in violation of Title VII of the Civil Rights Act, 42 USC 2000e et seq.

164.    The effect of Defendant's intentional and unlawful employment practice has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee.

165.    As a direct and proximate consequence of the unlawful employment practices, Plaintiff has sustained substantial damages, losses, and injuries, including loss of employment opportunity and compensation, damage to reputation, emotional trauma and distress, and other incidental losses.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 42 USC 2000e et seq,

166.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

167.    As a result of Plaintiff's filing an internal complaint with Defendant, and then later, seeking remedial assistance with the EEOC for race, color, and national origin discrimination and retaliation, Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended 42 USC200e et seq.

168.    Defendant retaliated against Plaintiff in failing to promote him to the High School Orchestra position, despite his overwhelming qualifications over the candidate that was hired.

169.    Defendant retaliated against Plaintiff in sanctioning him with a written reprimand and "Improvement Plan," because he asked to be given an equal opportunity to perform in his job.

170.    Defendant has subjected Plaintiff to a continuing violation of his civil rights by subjecting him to the treatment complained of herein.

171.    Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

172.    Defendant's violation as pled herein has caused injury and damage to Plaintiff, and as such, Plaintiff is entitled to legal and equitable remedies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT IV: FAILURE TO PROMOTE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 42 USC 2000e et seq,

173.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

174.    Upon information and belief, Defendant failed to promote Plaintiff, despite Plaintiff's substantial experience and qualifications.

175.    As a direct and proximate consequence of Defendant's wrongful acts, Plaintiff has sustained substantial damages, losses, and injuries, including loss of employment opportunity and

compensation, damage to reputation, emotional trauma and distress, and other incidental losses.

176.    Defendant performed the acts as alleged herein maliciously, fraudulently, and oppressively, with the wrongful intent to injure Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.

177.    The acts as alleged herein were known to, authorized, and ratified by Defendant, and as such, Plaintiff is entitled to recover punitive damages in amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable

## COUNT V: VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT MCL 37.2101 *et seq.* – DISCRIMINATION BASED ON COLOR, RACE, AND NATIONAL ORIGIN

178.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

179.    At all material times, Defendant was Plaintiff's employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* (hereinafter "ELCRA").

180.    At all material times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his color, national origin, and race.

181.    The ELCRA prohibits employers from discriminating against any individual concerning the compensation, terms, conditions, or privileges of employment, based on that employee's color, national origin, or race.  MCL 37.2202(1)(a).

182.    Plaintiff was subjected to hostile verbal conduct, including racial slurs and inappropriate comments concerning Plaintiff's national origin made by employees of Defendant.

183.    The conduct of Defendant and its employees rose to the level of direct discrimination against Plaintiff based on his color, national origin, and race.

184.    Plaintiff brought this to the attention of his supervisors, however the conduct was excused by Defendant and thus it continued.

185.    Plaintiff informed his supervisors that the aforesaid incidents of racial language made him uncomfortable and embarrassed, leaving it difficult to perform his job functions.

186.    Upon informing his supervisors, Plaintiff was subject to additional and heightened intimidation and discrimination by his co-workers and superiors based around his color, national

origin, and race.

187.    Defendant and its employees violated ELCRA under the theory of disparate treatment based on color, national origin, and race in the institution of adverse employment actions upon Plaintiff on the basis of his color, national origin, and race.

188.    Defendant and its employees, through their conduct, have made Plaintiff's job and employment so intolerable based on his color, national origin, and race, that he suffers extreme anxiety in fear that such discriminatory conduct and actions will continue.

189.    Plaintiff has suffered damages as a result of the discrimination, including loss of earning capacity, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT VI: VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT MCL 37.2101 *et seq.* – HOSTILE WORK ENVIRONMENT

190.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

191.    At all material times, Defendant was Plaintiff's employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* (hereinafter "ELCRA").

192.    At all material times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his color, national origin, and race.

193.    The ELCRA prohibits employers from discriminating against any individual concerning the compensation, terms, conditions, or privileges of employment, based on that employee's color, national origin, or race.  MCL 37.2202(1)(a).

194.    Plaintiff was subjected to hostile verbal conduct, including racial slurs and inappropriate comments concerning Plaintiff's national origin made by employees of Defendant.

195.    The conduct of Defendant and its employees rose to the level of direct discrimination against Plaintiff based on his color, national origin, and race.

196.    Plaintiff brought this to the attention of his supervisors, however the conduct was excused by Defendant and thus it continued.

197.    Defendant violated ELCRA by allowing this conduct to continue as they were aware it unreasonably affected Plaintiff's work environment and eventually escalated to mental

harm brought upon Plaintiff.

198.    Plaintiff has suffered damages as a result of the discrimination, including loss of earning capacity, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

199.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

200.    The conduct of Defendant, including its agents and employees, was and continues to be extreme and outrageous, such that it exceeds the bounds of decency and is regarded as intolerable in a civilized society.

201.    Defendant was aware that certain conduct and actions were likely to cause Plaintiff harm and emotional distress.

202.    Plaintiff stated to Defendant that this conduct caused him emotional distress on multiple occasions.

203.    Defendant failed to protect Plaintiff from suffering harm and emotional distress by failing to properly remedy the conduct of its employees.

204.    Defendant also failed to properly investigate multiple instances of egregious conduct that was brought to its attention by Plaintiff.

205.    Defendant intended to cause Plaintiff emotional distress, and/or Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

206.    As a result of Defendant's conduct, Plaintiff suffered severe emotional distress including but not limited to, anxiety, stress, anguish, shock, and humiliation.

207.    As a direct and proximate result of Defendant's actions, Plaintiff suffered and will continue to suffer, pain and suffering, and extreme and severe mental and emotional distress; he has incurred and will continue to incur, medical expenses for treatment by health professionals and for other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in the amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT VIII: VICARIOUS LIABILITY

208.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

209.    At all times material to Plaintiff's claims, Mr. Scott, Ms. Johnson, Ms. Philipps, and Dr. Graham were employees of Defendant.

210.    At all material times to the acts and omissions of Mr. Scott, Ms. Johnson, Ms. Philipps, and Dr. Graham, said individuals were acting within the course and scope of their employment.

211.    Defendant has a duty to provide Plaintiff with a safe working environment.

212.    Defendant is vicariously liable for the acts and/or omissions of its employees that caused injury to Plaintiff under the doctrine of *respondeat superior*.

213.    Defendant knew or should have known that Mr. Scott, Ms. Johnson, Ms. Philipps, and Dr. Graham had engaged in the acts alleged herein, or had the propensity to act in such a way that harmed Plaintiff.

214.    By virtue of Defendant's special relationship with Plaintiff, if failed to use due care to protect Plaintiff from the foreseeable harms caused by its employees.

215.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer, pain and suffering, and extreme and severe mental and emotional distress; he has incurred and will continue to incur, medical expenses for treatment by health professionals and for other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in the amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT IX
## NEGLIGENCE

216.    Plaintiff re-alleges the precedent paragraphs as if fully set forth herein.

217.    Defendant, as Plaintiff's employer, has a special relationship with Plaintiff.

218.    Given the aforesaid special relationship, Defendant was required to provide a safe environment for Plaintiff free against unreasonable risks.

219.    Defendant failed to provide a safe environment for Plaintiff free against unreasonable risks, despite its duty to do so.

220.    Defendant also failed to take reasonable steps to ensure Plaintiff had a safe work environment despite knowing of ongoing hostile occurrences that caused and continue to cause Plaintiff harm.

221.    By failing to remediate issues, discipline employees accordingly, and perform appropriate investigation into Plaintiff's complaints, Defendant breached its duty to Plaintiff.

222.    Defendant's breaches include, but are not limited to: failure to provide appropriate diversity and inclusion training; negligent hiring and retention; failure to supervise; failure to provide adequate and appropriate discipline; failure to provide and/or follow appropriate mechanisms for reporting employee concerns; and failure to appropriately investigate Plaintiff's complaints.

223.    As a direct and proximate cause of the aforesaid breaches by Defendant, Plaintiff has suffered and will continue to suffer, pain and suffering, and extreme and severe mental and emotional distress; he has incurred and will continue to incur, medical expenses for treatment by health professionals and for other incidental expenses; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in the amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment holding Defendant liable for embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A.  Declare that the actions as alleged herein violate Michigan law;

B. Enjoin Defendant from further and future acts of discriminatory conduct;

C. Award Plaintiff compensatory damages for his humiliation;

D. Award Plaintiff punitive damages reflecting the blatant disregard Defendant demonstrated for Plaintiff's rights under both Title VII and the ELCRA;

E. Award Plaintiff attorney fees, witness fees, and costs; and

F. Any such other and further legal and equitable relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

By: /s/ Courtney E.S. Fisk
Courtney E.S. Fisk (P68475)

## **VERIFICATION**

Under penalty of perjury under the laws of the United States of America and the State of Michigan, I hereby declare that I have read the foregoing, and that the facts alleged herein are true and correct to the best of my knowledge and belief.  I understand that a false statement in this Verification will subject me to penalties of perjury.

Dated: May 4, 2023

By: 
Josh Zallar

Respectfully submitted,

KREIS, ENDERLE,
HUDGINS & BORSOS, P.C.

Dated: May 4, 2023

/s/ Courtney E.S. Fisk
Sara E.D. Fazio (P62046)
Courtney E.S. Fisk (P68475)
Attorneys for Plaintiff